The next case, number 221213, Emmanuelle Tiersaint versus the Department of Homeland Security at all at this time. If Ms. Isabel Barnard would please introduce herself on the record to begin. Good morning, and may it please the court. Isabel Barnard, on behalf of appellant Emmanuelle Tiersaint, who's here with us in the courtroom today. I'd like to reserve four minutes for rebuttal. You can have three. All right. And I will use six minutes, and my co-counsel will cover the remaining issues aside from the discretionary function exception. And they would use the other six minutes. Thank you. Emmanuelle Tiersaint is a lawful permanent resident and a wheelchair user whose leg is amputated above the knee. Admittedly, Your Honors, this case involves a thicket of facts.  of a cleaning spade. We don't have a huge amount of time, and there's a lot of facts. So I think if you go right to the legal questions, it'll be best. Yes, Your Honor. The discretionary function exception cannot shield ICE officers' mistreatment of Mr. Tiersaint because these government employees' conduct was neither discretionary nor susceptible to policy-related judgments. First, the Rehabilitation Act, its implementing regulations, and ICE's own policies, the PBNDS, specifically required ICE officers to assist Mr. Tiersaint to his seat, to transport him in accessible vehicles, to accommodate his disability, and to train its employees on the requirements for transporting individuals with disabilities. The ICE officers who transported Mr. Tiersaint violated every one of those federal mandates, and thus their conduct was not discretionary. Second, the officers' actions... When you say that they violated those mandates, is your argument not that they provided ineffectual assistance, but that they provided no assistance at all, and therefore that can't be discretionary? Yes, Your Honor. They provided no assistance, no accommodations whatsoever. Had they followed their own rules as established in the PBNDS, they would have assisted Mr. Tiersaint to his seat, and they would have transported him in an accessible vehicle. They did neither. But the ICE officers only transported him on certain isolated or specific occasions in the record. Some of the transport was done by Sheriff's Department people, Suffolk County, Franklin County. So those comments were addressed just to trips that the record identifies as having been performed by ICE officers themselves? Yes, Your Honor. The district court only applied the discretionary function exception to the transports on February 29th, March 3rd, and March 17th. Good, thank you. Can I ask just something about the posture of the case? So we're coming up on a motion for summary judgment by the defendants, correct? Yes, Your Honor. And the district court affirmed the motion for summary judgment on the ground that the discretionary function exemption applied because there was no directive. Yes, Your Honor. And your contention is that that's wrong because at least the RHA, and I know you also say the PMBS, but at least the RHA has a directive. Yes, Your Honor. Is that the same thing as saying that defendants lose because that directive was not complied with? Or are you able to win on appeal in rejecting the summary judgment request simply by saying the rationale given is wrong because there was a directive? I believe, Your Honor, we can win on appeal by asserting that the rationale given was wrong because there is a directive. There's a specific mandate. What would that mean then? We would then vacate and remand, would it then be open to the district court to determine that there was no violation of the directive and therefore the discretionary function exemption applies? It's possible, Your Honor. We think as a matter of... In the way the case comes to us, do we have a, are you arguing, because it wasn't clear to me you were arguing in your papers to us, that on this record we could decide as a matter of law that the directive was violated as opposed to that there was a directive that could constrain the discretion enough such that the rationale of the district court was wrong? We think you can do both, Your Honor. And should you not find or not feel that you have enough information to decide that the directive was violated, you can still remand for the district court to make that determination to the extent that there are additional factual findings needed. What is your position? That we have enough or we don't? We think you have enough, Your Honor. The Rehabilitation Act requires providing an accommodation, these officers did nothing and in fact forced a man with an above-the-knee amputation to drag himself onto and off of these vehicles. The ICE officer's own rules required in mandatory terms for these officers to assist him to his seat, to transport him in a properly equipped vehicle. It's just a funny case because the fight is in the briefing is whether there's any directive at all. And usually it's a pretty significant thing when we're trying to figure out was if it was a straight up RHA case, the whole fight would be could you get summary judgment as to the violation of the RHA? And I don't know all the different arguments that could or could not be made, but I'm having a real trouble figuring out who's supposed to have made them. Yes, Your Honor. Not on the question of whether the RHA has a directive. Was this case written in cross motions summary judgment? Yes, Your Honor. But the issues that were appealing here are just with the district court's erroneous finding in effect. In granting summary judgment. Yes, exactly, exactly, Your Honor. Can I ask you one other question before you move on? We have a case called Abreu which as I read it is a federal directive that limits discretion and therefore prevents the application of the discretionary function exemption. Cannot be from a federal statute that has its own remedial scheme that does not provide for damages itself. Now the government has not mentioned that case, so understandably you haven't either. Are you familiar with it? And if you are, what are we supposed to do with that oddity? Roughly familiar, Your Honor. I think here, first off, under Limon, this court has made clear that it's elementary that when a federal officer violates a federal statute or a constitutional command, that can't be discretionary. And that's the situation here. But that was the situation in Abreu. Yeah, and we're not arguing here. We're not seeking to recover damages under the Rehabilitation Act, for example. They weren't in Abreu. Yes, Your Honor. The theory in Abreu was that it would be an end run around Congress's choice not to provide a damages remedy under the statute that's being relied on as the basis for saying no discretionary exemption under the FTCA to allow it. So, but I mean, it may be as simple as the government can waive sovereign immunity if it wants and so it can waive arguments in support of sovereign immunity. I think that's true, Your Honor. May I make a final point about the second prong of the discretionary function test? What's true? Are you saying waiver is true or that you think the case is distinguishable? Your Honor, I'm happy to consult with my co-counsel and get an answer to you about that by the conclusion of these arguments. But I do think that waiver is possible and also that this case is distinguishable. And I believe we can distinguish it in our briefings. You want to make one final point? Yes, thank you, Your Honor. Just to make sure we get to the second prong of the discretionary function exception test. The officers' actions were not susceptible to policy-related judgment because, in effect, they violated ICE's pre-existing policy of settled priorities as established through the PBNDS. And to the extent that these officers simply chose to shirk their responsibilities under the PBNDS, under their own rules, that's not susceptible to policy-related judgment. Thank you. Thank you very much, Your Honors. Thank you, counsel. At this time, Attorney Frank, please introduce yourself on the record to begin. Good morning, and may it please the Court. Emma Frank for Appellant Emmanuel Tiersant. With my brief time this morning, I'd like to address two further issues in the briefing. One, the government remains liable for duties it did not delegate to an independent contractor. And second, the District Court misconstrued Louisiana Civil Code Article 3492 as a statute of repose when Louisiana courts have recognized it as a statute of limitations. Now, turning to the independent contractor exception, the government does not allege and cannot allege that it did not delegate its duty to train contractors in appropriate transportation of detainees with disabilities. The PBNDS requires this, and there is evidence on the record that the ICE officers who did transport Mr. Tiersant did not receive training. Now, as to the air transportation at issue in this case, it remains in dispute whether the independent contractor, CSI, actually conducted some of these flights. The contract with CSI does not list Newark Airport as an operating location. There is no evidence on the record that CSI was the one to conduct the February 29th, 2016 flight out of Newark, other than pointing to the existence of a contract with CSI. But that's not what the independent contractor exception is. But how does that help you if there's no basis for concluding that a government employee did it? It helps us, Your Honor, because the government can retain duties that it does not delegate. So is there a basis for concluding that it, that, just help me understand what the sort of baseline understanding is. You're saying there is a factual basis from which a jury could reasonably conclude that with respect to each of these actions, unless the contract shows someone else did it, DHS did all of it? Your Honor, there's a factual dispute here that's sort of separate from the delegation of the contract because there's no actual evidence that CSI was the one to conduct the flight. With respect to Newark, the contractual evidence, as I understand it, doesn't help the government. There's no evidence at all that the contract ever extended to Newark. So the only inference that the record would support in its present state is that ICE was responsible for that flight. Yes, Judge Svellia, and given that this is coming up from summary judgment where all inferences had to be drawn in favor of the non-movement, who is Mr. Tiersen? I'm just asking the basis for the inference that DHS had it is the basic idea that given that he was a detainee of ICE, it's responsible for all of his transport during all of this scenario, absent evidence conclusively showing for versus summary judgment that it had been delegated. Yes. Is that the idea? Okay. Yes. And with respect to the other flights, as I understand your argument, even though there are contracts, those contracts are general. They don't confer any exclusive right on the contracting party. And there's no specific evidence that the contracting party was responsible for the flights from Louisiana and Miami that this detainee was loaded on. Yes, Judge Svellia. So you're correct. There's sort of two issues here. One, there's evidence on the record from ICE officers that there were other contractors besides CSI who operated flights specifically out of Alexandria. And moreover, the contract with CSI is, as you said, general and also ambiguous because we have this sort of permissive language at Supplemental Appendix 1187. Guard crew duties may normally include loading and unloading nationals. But in that same paragraph, we also have a statement that ICE officers will be responsible for the custody of detainees. That creates an ambiguity, which means we then turn to extrinsic evidence. The extrinsic evidence here is when you look at the ICE Air Operations Handbook, ICE is meant to oversee the contractor flight crew, the flight officer in charge. That's Supplemental Appendix 1133 to 1134. And it was required that you get authorization from ICE to board disabled detainees, which is at Supplemental Appendix 1146. Moreover, again, because we're looking at extrinsic evidence at this point, testimony indicates that ICE officers understood that they remained responsible for loading and unloading detainees. We've collected those record sites at page 44 of our opening brief. Now, finally, as to the ground transportation. Can I ask you, just so I understand how, imagine a case, maybe this is that case. The record is truly ambiguous, 50-50, whether it was ICE or the contractor. Okay. Who has what burden? You have the burden of showing it was ICE.  They have the burden to get the contractor exemption of showing it was the contractor. Yes. So, in that setting, who has what responsibility, now that we're on a summary judgment motion? Do you follow what I'm saying? You have to come forward with an argument that it is ICE. If the evidence is in equipoise on that question, just ambiguous on it, how could a juror conclude it was ICE? On the other hand, I understand your point. There's no way to conclude it was the contractor, so they can't get the contractor exemption. I think, at the very least, that precludes summary judgment, and it should have gone to a fact finder. Well, what would the fact finder do if it's in equipoise and there's no basis for deciding it was more likely one than the other? I apologize that I don't have the citations to the record for this because it didn't come up because this is something that a jury would come up against, but Mr. Tiersant, in his deposition, testified that he saw folks in ICE officer uniforms. There's evidence that a jury could look at. In the context of the summary judgment dispute, we didn't get to that evidence. I see I'm about to run out of time, and I just want to make two points to conclude. On the ground transportation... I'm sorry, before you do, this is a version of the same thing that came up in the RHA question, which is, again, the district court relied on the contractor exemption, and you're saying there's not a basis for that. Yes. Does that mean, on remand, it's still open to the district court to then determine whether there was enough basis for a juror to find that it was ICE, or are you asking us to determine now that the reason the district court was wrong is because there was enough basis to find not just that it wasn't the contractor, but that it also was ICE? Your Honor, there's sort of two issues here. One, the district court didn't reach a direct liability theory. It only assessed this from a vicarious liability perspective, so it didn't address these issues. Our position is that basic summary judgment standard, if this court agrees that inferences should have been drawn in Mr. Tiersant's favor, that there were disputed facts that should not have, that should have precluded the grant of summary judgment, then we can go back and... Right, but there's two different grounds in which summary judgment could have been granted for defendants. One is based on the contractor exemption. The other is an absence of evidence in which a juror could find that it was ICE. And I'm just asking you, which of those, are you saying both grounds are what you're asking us to rule for you on? One of the two grounds? Makes a difference for what our disposition would be. Both, but at the very least, the first ground. The contractor? Yes. And if I may just make one more point, the FCSO ground transportation, and the U.S. again, and also on the statute of repose issue, the district court made no argument that that was a statute of repose other than saying that it was, despite the fact that Louisiana courts have recognized it as a statute of limitations. Thank you. Thank you, counsel, at this time, counsel for the Department of Homeland Security and all. Please introduce yourself on the record to begin. May it please the court, Eve Pamonte on behalf of the federal defendants. Your honors, the case arises out of his, Mr. Theresaint's transport from the United States and his removal to Haiti, involving both ground and air transport. And as the court has heard and read in the briefing, there are kind of two buckets of transportation. One, the first committed by ICE officers, and then the second, the transportation by independent contractors. And your honors, plaintiff's transportation by the ICE officers is barred by the discretionary function exception. The discretionary function exception to the Federal Tort Claims Act shields the government from liability for any claim based upon the act or omission of an employee exercising or performing or failing to exercise or perform discretionary functions. The district court analyzed the familiar two-step framework that this court laid out in W versus the United States. It looked at the conduct at issue. It looked to see whether the conduct was... That just takes away the discretion. Your honor, the court found properly that the Rehabilitation Act is a broad statute of regulation. It doesn't mandate action. It clearly does. I'm sorry? It clearly does in some instances. It's an enforceable obligation. Sure, but not against the United States. And the United States argued that low and plaintiff's claims against the United States under the Rehabilitation Act were dismissed below. And so then we're left with kind of the shifting. The Rehabilitation Act claim has shifted throughout the course of this case. Initially, the Rehabilitation Act claim was made in partnership with Mr. Terrasaint's detention at the Suffolk County House of Correction. And it was on that basis that the summary judgment decision was both argued and made by the district court and the district court, the government arguing in the district court finding that the Rehabilitation Act was not, the government had not waived its sovereign immunity for liability under the Rehabilitation Act. Now on appeal, the argument is that the Rehabilitation Act prescribes a particular statute and a mandate to follow. But when you're looking at the discretionary function exception, Your Honor, you look at, and courts have decided, a general prohibition against discrimination doesn't mandate or govern those on-the-ground decisions that ICE officers are making or that transporting officers are making at the time of transportation. And in this case, the conduct was both discretionary and subject to a policy analysis. The REHAB Act, in particular, and then the PBNDS, Performance-Based National Detention Standards, provide guidance and they provide... I know if I'm fully following, are federal officers required to comply with the RHA? Okay. If a claim is brought under the Rehabilitation Act, in general, it may be an employment case, such as a failure to provide a workplace accommodation. And in that case, there is a three-part test that the courts will analyze under the Rehabilitation Act. So in those situations, yes, ICE officers who are transporting the Rehabilitation Act does not trump the discretionary function exception. In other words, it provides guidance. Not what I asked, I'm just asking, could you get an injunction against a federal officer for failing to comply with the RHA? No, because the United States has not waived its sovereign immunity for damages. I didn't ask that. I said, could you get an injunction under the RHA against a federal officer? In certain circumstances, in an employment context, if it's pled and the circumstances are there, potentially. But not in the detention context, you couldn't even get an injunction under the RHA? No, because, Your Honor, in this particular case, this is not a situation where the Rehabilitation Act was even pled by the plaintiff. You're still not answering my question. Not in this case. In any case, in the case in which I tried to get an injunction against an ICE officer for violating the RHA with respect to their detention practices, could I get it in an action under the RHA against an individual ICE officer? Just for injunctive relief. There is no right of action for damages. I didn't ask that. I said, for injunctive relief. Oh, for injunctive relief, Your Honor. I don't believe that an individual officer may be sued. The entity, you could sue ICE as an entity for it, correct? Yes, they would have to show that they were qualified. So doesn't that mean that ICE is subject to the directive of the RHA? To provide a general accommodation when requested by a person, and then there's a whole burden-shifting network that applies. And the claim here is that, since no assistance was given, it was violated. And so the question is, was there a directive under federal law they had to follow? Not in this case. If so, then the idea that there is no directive is just not true. The question of whether they violated that directive is a different question from whether there was a directive that constrained discretion. Sure, and under these circumstances, the Rehabilitation Act is too broad of a statute to mandate directions to ICE and to the officers. Because again, the Rehabilitation Act, Your Honor, is all about providing accommodations. And when you look to the PBNDS, the detention standards, you look at the anti-discrimination guidance. That's all guidance that is provided. There's an infrastructure. There are handicapped accessible vehicles that are within the ICE's fleet. But the choice, how to implement that, is where the discretionary function comes in and came in in this particular circumstance, Your Honor. And the reason I was a little murky, and I apologize for not quite understanding the judge, your question, Judge, is because that situation was not litigated below and is not the decision on which the district court, the basis on which the district court made its decision. The district court properly found that this broad prohibition against discrimination, along with the internal guidance offered by ICE employees providing transportation, were too broad to mandate conduct outside of the discretionary function exception. And that's the position that the government takes here. Honestly, I just don't understand it. Because I just don't understand why it matters how broad the directive is if you're conceding that there is a boundary to it that can be crossed, at which point you're violating it. Because that's Is it impossible for ICE, in its detention practices, to be in violation of the RHA? In its detention practices, for example, if they put the plaintiff in, as this court has found, non-accessible housing, for example, that might be a violation of the Rehab Act. But in the transportation of Mr. Territh St. There's nothing they could do that would violate the RHA? In this particular circumstances, under the facts present here? That's an argument that they didn't violate the RHA, not that they couldn't. The district court's ruling, as I understand it, was that the nature of the RHA directive is too general to be a directive. That's a different argument. Your argument, counsel, seems to be directed to the fact that there's no way for us to get around the discretionary function exception if ICE makes choices as to methods of rehabilitation. But what's troubling me is we've got a situation. ICE didn't make a choice. ICE simply ignored the need for rehabilitation. This isn't the case where they used one means of assistance instead of another that is arguably better. But it's a situation where they provided no assistance at all in circumstances where the Rehabilitation Act clearly provided that assistance should be rendered. Well, again, Your Honor, the discretionary function exception applies both if the officers were negligent in the choices that they made and even if they abused their discretion. And while I understand where the court is going with that question, and while the facts, there may be even more compelling facts than the one at issue here, when the sovereign. That assumes that they had discretion. You're exactly right that if the only thing that restrains discretion is the negligence claim. That's not right. But the argument here is that the thing that's constraining discretion is not the tort claim. It's a directive from the federal government to its agents under the RHA. But the RHA is not a mandating directive. In other words, it is provide in the cases where the government has been held liable under the RHA. It's been in situations such as employment contacts or in situations where detention, for example, may have been the person needed accessible housing and they were not put in accessible housing. In accommodation, the issue is in exercising discretion, how they fulfill that mandate. But it's still a mandate of an accommodation. And what the plaintiffs are arguing is that they completely ignored the mandate. And I understand that argument, Your Honor. But under the discretion. The district court did not reject that argument on the ground that there was a factual basis for concluding that they made a choice in how to comply with it. It rejected their argument on the ground that there was no mandate to comply with. That's a very different contention. Well, and I think the district court said that it was broad. In other words, they provide it was broad. Broad doesn't mean that it's not discernible. It just means it's broad. And the exercise of discretion can well fit within the breadth of it. And then in choosing how to comply with the RHA back, that's where the discretionary function comes in. But that wasn't the ground the district court relied on. But the evidence. And the evidence in the record. You haven't even argued to us that there's evidence in the record that they tried to comply with it and the way they did was a reasonable way of complying with it. Because, Your Honor, under the cases that have been decided on this issue, even if they ignored it, that behavior falls within the discretionary function exception. And with the evidence that is in the record and looking at the PBNDS and the Rehab Act, it provides room for discretion for the officers. And if the officers choose to do nothing, Your Honor, that still falls within the discretionary function exception. Before you sit down, are you familiar with the Abreu case? I am. I cited it on page 12 of the brief. And what is your position with respect to that? Is that the RHA simply then cannot be enforced? It's not that it can't be enforced. As a ground for finding that the discretionary function exemption does not apply? In this case, yes, Your Honor. And that's because the RHA doesn't have a damages remedy? It's true. Yes. We argued that below as well. And if the court has no further question, we rest in the briefs. Thank you. Thank you, counsel. At this time, counsel for the Suffolk County Sheriff's Department would introduce herself on the record to begin. May it please the court, Melissa Garand on behalf of the Suffolk County Sheriff's Department. The lower court correctly held that Mr. Teersink failed to raise a tribal issue of fact that his placement in the medical housing unit at the Suffolk County House of Correction was because of his disability as opposed to medical reasons. When Mr. Teersink arrived at the Suffolk County House of Correction on February 18th of 2016, he suffered from significant medical issues. He had an above the knee amputation. He had an arm issue. And most significantly, he had had a fall in a non-handicap accessible shower in another correctional facility where he was unconscious for six hours and he had suffered a concussion. So when he was placed- We've got why his initial placement may have been reasonable. I think their argument focuses on the duration of the placement there. Yes, so for the 10 days that Mr. Teersink remained in the medical housing unit after his initial placement, he was evaluated by medical staff on a very regular basis. He was seen by medical staff at times up to six times a day, no less than three times a day. The lower court correctly considered the entire duration of his placement in the medical housing unit when she made her decision that there was no evidence of discrimination. And on page four of her addendum, she specifically noted when he was cleared from the medical housing unit and the fact that he remained there for the two days until he transferred from the Suffolk County House of Correction. The medical- The lower court also correctly recognized and specifically stated that there was absolutely no evidence in the record presented by the plaintiffs of discrimination for the time period that he remained in the medical housing unit. And the only evidence or reason that he cites as to why he remained in the medical housing unit was because he was in a wheelchair. And that's belied by the fact that when he returned to the Suffolk County House of Correction less than a month later, he did not go back to the medical housing unit. He went straight to general population. So there's no evidence in the record that the Suffolk County Sheriff's Department had a pattern of returning individuals with disabilities to the medical housing unit. And the lower court also distinguished Mr. Teersaint's placement in the medical housing unit from the Olmstead case. And in that case, they considered the placement of the mentally disabled who were institutionalized and when they should be sent to community programming. And the lower court specifically held that Mr. Teersaint's placement in the medical housing unit was vastly different than the Olmstead case. The only other thing I'd like to raise is the fact that there's no issue of intentional discrimination in this case in order for the plaintiff to pursue compensatory damages. The plaintiff did fail to raise that issue in their brief. So there's no remedy here for the plaintiff. And I respectfully ask that you affirm the lower court's decision as to the Suffolk County. Thank you. Thank you. Thank you, counsel. At this time, counsel for the appellant, please introduce themselves back on the record for a three-minute rebuttal. May it please the court, Emma Frank. A couple of points on rebuttal. Your honors correctly notice that the Rehabilitation Act requires modest affirmative steps towards providing a reasonable accommodation. That's Topekos out of the Second Circuit. This circuit has recognized that there's an affirmative duty under the Rehabilitation Act. What ICE's counsel has failed to mention is that the PBNDS acknowledges that ICE officers must comply with the Rehabilitation Act. That's section 1.3 Roman numeral 2.5, which is at Supplemental Appendix 877. It states, reasonable accommodations shall be made. There's two ways in which we've said that this conduct was not discretionary. One, there's the Rehabilitation Act. But two, there's the PBNDS. And the PBNDS acknowledges that ICE officers had to do something. Instead, they did nothing. To the extent that ICE wants to dispute that, the inference should have been drawn in Mr. Tierson's favor. And what's the content of the PBNDS reasonable accommodation? The same as the RHA? I believe the full quote, quite literally, is going to have it right here. Reasonable accommodations shall be made for detainees with physical disabilities and or special needs. In addition to that, which recognizes the same sort of- I don't think you answered my question. What is the content of the reasonable accommodation in that regulation? Is it the same whole framework from the RHA? The very least acknowledges that ICE was required to provide a reasonable accommodation. I think as Judge Thompson- What would be the content of it if it's independent of the RHA? I think we can also look to the accompanying sections in the PBNDS. So there's a requirement that vehicle crews shall assist detainees with disabilities and special needs to their designated seat. That's section 1.3BJ3H at supplemental appendix 883. There's a requirement that vehicles used for transporting detainees shall be properly equipped, maintained, and operated, including equipment appropriate and necessary. Is there any guidance from DHS as to what's reasonable accommodation? It can be, but I think even- No. Is there? By reasonable accommodation? Is there any guidance from DHS as to what DHS understands that reasonable accommodation to entail? Reasonable accommodation should at very least be informed by- No, that's the next step. Is there anything from DHS about DHS's understanding of what reasonable accommodation entails in its own guidance and regs? I mean, DHS's own understanding of its regulations is separate and apart from the fact that it was not discretionary to violate them. Well, are those provisions you just recited DHS's thinking about what the accommodation means? Those regulations are a part of the National Detention Standards, which is the sort of basic standards for how detainees should be treated. It's an understanding that detainees with disabilities should receive some sort of accommodation, which just didn't happen here. And those standards are adopted by ICE? Yes. But then those standards refer to expected outcomes under them, which are a little bit- I mean, it's- Squishy compared to, this is what you must do. That's why we're asking about those independent. The RHA seems like a directive. There's the argument as to whether it applies here. But the things you're now talking about, whether those are really directives or statements of expected outcomes, is a little bit unclear to me. I would respectfully disagree, Your Honor, given the mandatory language and the use of the word shall. This is not, maybe you do this. This is not, it would be great if this happened. This is a shall. This is what is supposed to happen. And it didn't happen. I guess that just leaves me the question, what's the it? What's the reasonable accommodation? Those particular regulations are contemplating had to be provided. Where would we find the content of that? So where we would find the content of that is just, this is not really a case about exactly what they had to do because they did nothing. We're not really in that zone. We're in a zone where we're so far over the line. Thanks. Thank you, counsel. That concludes argument in this case.